Diana CASAS, Appellant,

v.

WORNICK COMPANY, Ron Wornick, Bill Barth, Executive Vice President, Right Way Foods Corporation, Valerie Hutchins Woerner, President, MRE Division, Appellees.

No. 13–90–100–CV.

Court of Appeals of Texas, Corpus Christi.

Sept. 18, 1991.

Rehearing Overruled Oct. 17, 1991.

Brinkley L. Oxford, Oxford & Oxford, Edinburg, for appellant.

John E. McFall, McFall & Ashcraft, Dallas, Raymond A. Cowley, Ewers & Toothaker, McAllen, Shirley Selz, Valerie Fogleman, Gary, Thomasson, Hall & Marks, Corpus Christi, for appellees.

Before NYE, C.J., and SEERDEN and HINOJOSA, JJ.

## OPINION

SEERDEN, Justice.

This is an appeal from a summary judgment. Diana Casas sued appellees, alleging that she was entitled to damages due to being wrongfully terminated from her employment with Right Way Foods Corporation, sometimes called RAFCO, which was a subsidiary of Wornick Company. Appellant's pleadings alleged four independent causes of action: 1) a claim under the Texas Equal Rights Amendment, Texas Const. art. 1, Sec. 3a; 2) the intentional infliction of emotional distress; and 3) a cause of action based upon the doctrine created in *Sabine Pilot Service, Inc. v. Hauck*, 687 S.W.2d 733 (Tex.1985), and breach of the duty of good faith and fair dealing. Appellant alleged that each of appellees were liable for the acts of RAFCO. Summary judgment was granted in favor of each of appellees as to all of appellant's alleged causes of action.

By her sole point of error, appellant alleges that the trial court erred in granting the summary judgment because the evidence before the court demonstrated there were genuine issues of material fact concerning each of her causes of action. In a summary judgment proceeding, the burden of proof is on the movant to show that there exists no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex.1972). Once the movant has established a right to summary judgment, the burden shifts to the nonmovant to present issues which would preclude summary judgment. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671,

678 (Tex.1979). The question on appeal is not only whether the summary judgment proof raises a fact issue, but whether the summary judgment proof establishes as a matter of law that there is no genuine issue of material fact concerning one or more of the essential elements of the plaintiff's cause of action. *Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828 (Tex. 1970).

### Good Faith and Fair Dealing

■ Casas asserts a cause of action against Appellees for breach of the duty of good faith and fair dealing, which has been held to exist in Texas in "special relationships", e.g., insurer-insured, workers' compensation carrier-claimant. *See Arnold v. Nat'l County Fire Ins. Co.,* 725 S.W.2d 165 (Tex.1987); *Aranda v. Insurance Co. of North America,* 748 S.W.2d 210 (Tex.1988). The argument that employers owe their employees an obligation to deal fairly and in good faith when making termination decisions has recently received increased attention.

In *McClendon v. Ingersoll–Rand Co.,* 757 S.W.2d 816, 819–20 (Tex.App.—Houston [14th Dist.] 1988), *rev'd on other grounds,* 779 S.W.2d 69 (Tex.1989), *rev'd,* —— U.S. ——, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990), the Court of Appeals held that the obligation did not exist in an at-will employment situation. Though the Texas Supreme Court majority opinion reversing *McClendon* did not reach the issue of whether a duty of good faith and fair dealing arose, Justice Cook, dissenting, stated his opposition to extending such a duty to the employment relationship. *See McClendon,* 779 S.W.2d at 71–75. Subsequent opinions by Texas Courts of Appeals have relied upon the *McClendon* opinions as indicating the Supreme Court's rejection of an invitation to recognize a duty of good faith and fair dealing in an employment context. *See Hicks v. Baylor University Medical Center,* 789 S.W.2d 299, 303–304 (Tex.App.—Dallas 1990, no writ); *Winograd v. Willis,* 789 S.W.2d 307, 312 (Tex. App.—Houston [14th Dist.] 1990, no writ); *Lumpkin v. H & C Communications, Inc.,* 755 S.W.2d 538, 540 (Tex.App.—Houston [1st Dist.] 1988, writ denied). *McClendon,* however, was reversed by the United States Supreme Court based on ERISA[1] preemption. Concurring, Justice Doggett lamented this result, noting the lack of Congressional intent to preempt state causes of action for breach of the duty of good faith and fair dealing. *Cathey v. Metropolitan Life Ins. Co.,* 805 S.W.2d 387 (1991) (Doggett, J., concurring) (citing *Blind Faith Conquers Bad Faith: Only Congress Can Save Us After Pilot Life v. Dedeaux,* 21 Loy. L.A.L.Rev. 1343, 1381 n. 303 (1988)). The effect of *McClendon,* then, leaves unanswered the question of whether a cause of action for breach of the duty of good faith and fair dealing exists in an employer-employee relationship.

■ Several jurisdictions have permitted suit for breach of the covenant of good faith and fair dealing in an employment contract.[2] Texas, however has clung to the judicially-created "employment at-will" doc-

---

1. Employees' Retirement Income Security Act of 1974. 29 U.S.C. §§ 1001–1461 (1988).

2. See, e.g., *Peterson v. First Fed.Sav. & Loan Ass'n of Puerto Rico, Inc.,* 617 F.Supp. 1039, 1042 (D.V.I.1985) (recognizing cause of action for implied covenant of good faith in employment at-will contract); *Mitford v. De Lasala,* 666 P.2d 1000, 1007 (Alaska 1983); *Cleary v. American Airlines, Inc.,* 111 Cal.App.3d 443, 168 Cal. Rptr. 722, 728 (1980) (concept of good faith and fair dealing applies to all contracts); *Albee v. Wolfeboro R.R. Co.,* 126 N.H. 176, 489 A.2d 148, 151 (1985) (same); *Association Group Life, Inc. v. Catholic War Veterans,* 61 N.J. 150, 293 A.2d 382, 384 (1972) (same).

The seminal California case is *Cleary v. American Airlines, Inc.,* 111 Cal.App.3d 443, 168 Cal. Rptr. 722 (1980). The court held that an implied covenant of good faith and fair dealing existed in every contract under California law sounding in both tort and contract.

*Cleary* was subsequently modified by the California Supreme Court in *Foley v. Interactive Data Corp.,* 47 Cal.3d 654, 254 Cal.Rptr. 211, 765 P.2d 373 (1988). After an extensive analysis of the "special relationship" test, the *Foley* Court decided that the employment relationship was fundamentally contractual and therefore the sole available relief for breaches of the implied covenant of good faith and fair dealing should be those sounding in contract.

trine. *See Schroeder v. Texas Iron Works,* 813 S.W.2d 483, 489 (1991); *Winters v. Houston Chronicle Pub. Co.,* 795 S.W.2d 723 (Tex.1990); *Sabine Pilot Service, Inc. v. Hauck,* 687 S.W.2d 733, 734 (Tex.1985); *East Line & R.R.R. Co. v. Scott,* 72 Tex. 70, 10 S.W. 99, 102 (1888). While we are aware of some jurists' and commentators' criticism of the doctrine,[3] we believe that the current mood of the majority of the Texas Supreme Court is to continue to follow the at-will rule. Appellant, however, argues in her petition that she was not an at-will employee because of the conduct and statements of appellee. Absent a specific contractual provision to the contrary, an employer has the absolute right to terminate an employee with or without cause. *East Line R.R.R. Co. v. Scott,* 72 Tex. 70, 10 S.W. 99 (1888). Any alleged oral agreement that is not capable of performance within one year would be unenforceable under the statute of frauds. Tex.Bus. & Com.Code Ann. § 26.01(b)(6); *Schroeder v. Texas Iron Works,* 813 S.W.2d 483, 489 (1991). Because of our duty to follow the dictates of our higher court, we feel compelled to hold that appellant was an at-will employee and was owed no duty of good faith and fair dealing.

### The Texas Equal Rights Amendment

■ Tex. Const. art. 1 § 3a provides that "equality under the law shall not be abridged because of sex, race, color, creed, or national origin." This amendment does not apply "to activities involving purely private discrimination." *Cedillo v. Ewlin Enterprises, Inc.,* 744 S.W.2d 217, 219 (Tex.App.—Corpus Christi 1987, writ de-

nied per curiam, 756 S.W.2d 724 (Tex.1988); *see also Lincoln v. Mid–Cities Pee Wee Football Ass'n,* 576 S.W.2d 922, 925 (Tex. Civ.App.—Fort Worth 1979, no writ); *Junior Football Ass'n v. Gaudet,* 546 S.W.2d 70, 71 (Tex.Civ.App.—Beaumont 1976, no writ). The words "under the law" within the purview of this amendment require that the discrimination complained of be state action or private conduct that is encouraged by, enabled by, or closely interrelated in function with state action. *Junior Football Assoc.,* 546 S.W.2d at 71. Appellees presented summary judgment evidence that both RAFCO and the Wornick Company were private corporations; appellant did not present any summary judgment evidence to controvert this issue. Consequently, summary judgment on this issue was proper.

### Sabine Pilot

■ Next, appellant contends that she has stated a cause of action under the narrow exception to the employment at will doctrine created in *Sabine Pilot v. Hauck,* 687 S.W.2d 733 (Tex.1985). This exception allows an employee to sue for wrongful termination when she proves by a preponderance of the evidence that she was discharged for the sole reason that she refused to perform an illegal act. *Sabine Pilot,* 687 S.W.2d at 735. In her affidavit, in response to the motion for summary judgment Casas alleged that "there were many instances which, in retrospect, I know were deceitful and perhaps illegal.... [and] ... [g]iven that my position required me to keep accurate information, I kept detailed notes of many of our meet-

---

**3.** The at-will doctrine is increasingly seen as a "relic of early industrial times" and a "tenacious vestige from the industrial revolution and *laissez-faire* economics." *See Johnston v. Del Mar Distributing Co.,* 776 S.W.2d 768, 769 (quoting *Sabine Pilot Serv., Inc. v. Hauck,* 687 S.W.2d 733, 735 (Tex.1985) (Kilgarlin, J., concurring)); *Little v. Bryce,* 733 S.W.2d 937, 939 (Tex.App.—Houston [1st Dist.] 1987, no writ) (Levy, J., concurring); *Sabine Pilot,* 687 S.W.2d at 735 (Kilgarlin, J., concurring) ("The [at will] doctrine belongs in a museum, not in our law"). Economic realities, the modern worker's quest for security in the workplace, and respect for human dignity have prompted many commenta-

tors to criticize this rule. This modern age of increasing technology, specialization of skills, and an unstable economy leaves a very risky and unpredictable situation for the worker whose livelihood depends entirely on his labor. *See Little v. Bryce,* 733 S.W.2d at 939 (Levy, J., concurring). Because today's worker has no guarantee that he will be able to find another job if arbitrarily discharged, he has become more stationary and expects his employer to treat him fairly. *See* Comment, *The At–Will Doctrine: A Proposal to Modify the Texas Employment Relationship,* 36 Baylor L.Rev. 667, 685 (1984).

ings, some of which, I later learned, could implicate the company and top management individuals in criminal misconduct." Appellant relies on *Johnston v. Del Mar Distributing Co.*, 776 S.W.2d 768 (Tex. App.—Corpus Christi 1989, writ denied), wherein this Court held that a cause of action existed under *Sabine Pilot* when an employee is fired for investigating into whether an act she is required to perform is illegal. In the instant case, however, the summary judgment evidence does not establish facts which show that Casas was terminated for investigating into possible criminal misconduct, or that she was fired because she refused to perform an illegal act. Rather, she states that the reason for her termination was that she possessed information which could implicate the company in criminal misconduct. Even if we take this information as true, Casas still has not stated a cause of action under *Sabine Pilot.* Accordingly, we hold that the trial court did not err in granting the summary judgment on this ground.

### Intentional Infliction of Emotional Distress

■ Casas was employed by RAFCO from 1980 until she was terminated in 1986. She was originally employed as a personnel manager and in 1983 was promoted to the position of Director of Human Resources.

When she was hired, she was under the impression and expectation that, provided her work was satisfactory and the company continued to be operational, she would be guaranteed a job with the company. Throughout her career with RAFCO, her efforts were rewarded with superior ratings in her performance evaluations and annual company bonuses. Prior to her sudden and unexpected termination, she had not received any reports or evaluations indicating deficiencies or poor performance. Casas offered by way of summary judgment evidence an evaluation memorandum dated November 1985, conducted by Valerie Hutchins Woerner, which gave her excellent and above-average ratings:

You have real strengths as a facilitator and also, as a shirt-sleeves personnel manager. In addition, you are always very poised and make a very positive impression and serve as an excellent representative for our company in the company and in community events as well. You are also one of our company's best resources for discussing plans, options and strategies for the company. This is an important role and one which we can continue to expand. I am interested in providing with the supportive environment in which to develop your talents in such areas as research, analysis, and reporting, for your continued professional development and satisfaction. You have excellent staff Diana and I would urge you to continue to delegate additional responsibilities to them to free you up to do updates and analysis re significant issues to keep our company on a positive track. These will be shared as appropriate with Wornick Company and will further your developments the key resources in these areas for the Wornick Company.

Casas' evidence shows that all her evaluations were excellent until she was asked to misrepresent facts to government auditors and refused to do so. She alleges that her termination was caused by this refusal. While she was terminated in the private office of her supervisor, a security guard was called to escort her off of premises in the presence of her co-workers. While she was attempting to get her "things" the guard was told to get her off the premises in five minutes.

She wrote a letter to appellee Barth on April 28, 1986, which is part of her summary judgment evidence, wherein she describes the events in these terms:

"The manner in which I was fired was brutal and incomprehensible, in light of our achievements over the past six and one-half years, and my unquestionable loyalty to the company throughout my employment."

"No legitimate rationale was given for this impulsive action."

"I hope you will be able to clarify for me why this has happened."

There was no response to this letter. She felt shock, anger, humiliation, embarrassment, confusion, and frustration.

■ The tort of intentional infliction of emotional distress has four elements: 1) intentional or reckless conduct by appellees, 2) that was extreme and outrageous; 3) that caused appellant emotional distress; and 4) that was severe. *Tidelands Automobile Club v. Walters,* 699 S.W.2d 939, 942 (Tex.App.—Beaumont 1985, writ ref'd n.r.e.) (citing Restatement (Second) of Torts § 46 (1965)). This tort is recognized in Texas as a separate cause of action. *Havens v. Tomball Community Hosp.,* 793 S.W.2d 690, 692 (Tex.App.—Houston [1st Dist.] 1990, no writ). One commentator has stated:

> "The tort ... is an established one, with a life of its own, applying to an infinite variety of conduct not limited to discharge or even to the employment context. An at will employee should not be required to suffer the consequences of conduct that would be considered tortious in any other context, merely because it is coming from an employer. Indeed, the relationship between an employer and an at-will employee is one in which the employee is particularly vulnerable—a factor considered by some courts in finding the employer liable for outrageous conduct."

3A A. Larson, *Employment Discrimination,* § 119.20 at 26–64 (1987). *See also Abston v. Levi Strauss & Co.,* 684 F.Supp. 152, 157 (E.D.Tex.1987).

Appellees asserted in their motion for summary judgment that they were entitled to judgment as a matter of law because appellant could not show that appellees' conduct was intentional or reckless, extreme or outrageous, or that Casas' emotional distress was severe.

■ While Texas courts continue to follow the doctrine of employment at will and give the employer the general right to terminate such employment at any time, where there is action independent of the discharge of the employee that meets the *Tidelands* test for intentional infliction of emotional distress, the fact that such conduct was ancillary to the termination of employment is no defense for such conduct.

In *Havens v. Tomball Community Hospital,* 793 S.W.2d at 690, the court reversed the granting of a summary judgment where appellant, a nurse, was discharged by her employer and alleged intentional infliction of emotional distress based on harsh treatment and rumors circulated about her before her discharge. The court concluded that these allegations were separate and independent from her allegations of wrongful discharge and were not negated sufficiently to justify the granting of summary judgment.

The same situation exists within the instant case. We hold the allegations of appellant raise a fact issue both as to the outrageousness of the conduct and to the degree of injury. *See also Dean v. Ford Motor Credit Co.,* 885 F.2d 300 (5th Cir. 1989).

Accordingly, we hold that a fact issue exists concerning Casas' cause of action of intentional infliction of emotional distress.

### Vicarious Liability

■ Appellant further contends that the Wornick Company, Wornick, Barth, and Woerner are vicariously liable because they are all agents of RAFCO. Wornick Company is the parent corporation of RAFCO. Appellants concede in their motion for summary judgment that RAFCO would be liable for any unlawful acts committed by its M.R.E. division (the division in which Casas was employed), but argues that Wornick Company is not liable for the acts of its wholly-owned subsidiary, RAFCO. Casas offered evidence that Woerner, President of M.R.E., reported directly to Barth, Vice-President of the Wornick Company. Barth also participated in M.R.E.'s staff meetings and, when unable to attend, he was provided with a memorandum of the meeting. Casas also offered a letter that awarded Casas a bonus for her outstanding work and which was signed by Wornick as "President" of RAFCO. This evidence is sufficient to create a fact issue regarding whether Wornick Company, Wornick, and

Barth are agents of RAFCO. The summary judgment is AFFIRMED with respect to appellant's causes of action for violation of the Texas Equal Rights Amendment, wrongful termination for refusing to perform an illegal act, and breach of the duty of good faith and fair dealing. The judgment is REVERSED and REMANDED on appellant's cause of action for intentional infliction of emotional distress, and for a determination of whether appellants Wornick Company, Wornick, Barth and Woerner are liable to appellant as agents of RAFCO.

Dissenting opinion by NYE, C.J.

NYE, Chief Justice, dissenting.

I agree with most of the majority's holding in this case; however, the majority errs by reversing a part of the summary judgment that dismisses Casas' intentional infliction of emotional distress claim. There is no evidence showing the element of extreme and outrageous conduct by appellees, her employers. For this reason, I respectfully dissent.

This tort is an established one, with a life of its own, applying to an infinite variety of conduct not limited to discharge or even to the employment context. *Abston v. Levi Strauss & Co.*, 684 F.Supp. 152, 157 (E.D.Tex.1987) (quoting 3A A. Larson, *Employment Discrimination*, § 119.20 at 26–64 (1987 ed.)). The Restatement (Second) of Torts sets out the guiding principles of this cause of action, stating in pertinent part:

It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in char-

acter, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. . . .

The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. . . . There is no occasion for the law to intervene in every case where someone's feelings are hurt. . . .

The extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests.

Restatement (Second) of Torts § 46, comments d, e (1965).[1]

The *Abston* court cited *Alcorn v. Anbro Eng'g, Inc.*, 2 Cal.3d 493, 86 Cal.Rptr. 88, 468 P.2d 216 (1970), and *Lucas v. Brown & Root, Inc.*, 736 F.2d 1202 (8th Cir.1984) as two cases illustrating "extreme and outrageous" conduct by an employer. The court also observed that some courts consider the relationship between an employer and an at-will employee a factor in finding the employer liable for outrageous conduct because their position is one in which the employee is particularly vulnerable. *Abston*, 684 F.Supp. at 157. Nevertheless, it must be emphasized that it is only where the emotional state is "extreme" that liability for severe emotional distress arises; this means that the distress inflicted on the plaintiff is so severe that no reasonable person could be expected to endure it without undergoing unreasonable suffering. *Tidelands Auto. Club v. Walters*, 699 S.W.2d 939, 941 (Tex.App.—Beaumont 1985, writ ref'd n.r.e.).

In *Alcorn*, the plaintiff, a Black male and a truck driver employed by defendant Anbro, was the shop steward for the Teamster's Union. On the day of the incident,

---

1. The Restatement offers several examples of extreme and outrageous conduct, namely, (a) threats of arrest by a private detective posing as a police officer, (b) false accusations and threats of imprisonment and personal as well as parental disgrace within the community by a high school principal to a student to coerce a "confession," and (c) lurid letters from a creditor to a debtor depicting lightning about to strike, attacking the debtor's character and promising a lawsuit, garnishment of wages and to effect the debtor's discharge from employment.

the plaintiff advised Palmer, a Caucasian male and Anbro's field superintendent and shop foreman, that he [plaintiff] had advised another Anbro employee not to drive a certain truck to the job site because the employee was not a teamster. Palmer allegedly immediately responded by shouting at the plaintiff in a rude, violent and insolent manner as follows:

> You goddam 'niggers' are not going to tell me about the rules. I don't want any 'niggers' working for me. I am getting rid of all the 'niggers'; go pick up and deliver that 8–ton roller to the other job site and get your pay check; you're fired.

Thereafter Anbro's secretary, another Caucasian male, allegedly confirmed and ratified Palmer's acts, including plaintiff's discharge. The trial court dismissed the plaintiff's intentional infliction of emotional distress claim. The *Alcorn* court reinstated the plaintiff's cause of action, observing that it was for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so. *Alcorn*, 468 P.2d at 219; *see also* Restatement (Second) Torts, § 46, comment h (1965).

In *Lucas*, the plaintiff brought an action for intentional infliction of emotional distress, alleging that the defendant-employer's extreme and outrageous conduct included her supervisor's sexually propositioning her and placing her job on the line, as well as Brown & Root's contesting her unemployment compensation by alleging that she was discharged for misconduct, namely, for failing to return to work or to call in, when it had made misrepresentations to her regarding receipt of unemployment benefits. The court held that these allegations were sufficient to state a cause of action for this tort and reversed the summary judgment against the plaintiff's claim.

In the present case, Casas has not alleged any facts amounting to "extreme and outrageous" conduct by appellees. She was dismissed in private. Although she was escorted to the entrance to the complex and not allowed to re-enter the complex, she fails to show that such a practice was done in a demeaning manner or that it was somehow not within appellees' purview as a business proprietor. There is no evidence of vituperative language or vindictive conduct. *See Alcorn*, 468 P.2d at 219 n. 5.

I would hold that Casas failed to show by proper summary judgment evidence conduct by appellees sufficiently outrageous to establish a prima facie case of intentional infliction of emotional distress. I would affirm the trial court's summary judgment dismissing this cause of action.