## The GOODYEAR TIRE AND RUBBER COMPANY, Appellant,

v.

### Hortencia PORTILLA, Appellee.

No. 13–91–362–CV.

Court of Appeals of Texas, Corpus Christi.

June 25, 1992.

Rehearing Overruled Aug. 31, 1992.

---

**666**

Tom Garner, Jr., Wanda Roberts, Port Lavaca, for appellant.

John Griffin, Jr., Cynthia T. Sheppard, Victoria, for appellee.

Before DORSEY, KENNEDY and FEDERICO G. HINOJOSA, Jr., JJ.

## OPINION

DORSEY, Justice.

This is a wrongful termination action by an employee against her former employer. The critical issues concern the existence an oral employment contract and whether it violates the Statute of Frauds. The trial court entered a judgment on the verdict in favor of the employee, Portilla. Appellant, Goodyear Tire and Rubber Company, raises four points of error, and appellee asserts one cross point. We affirm.

Portilla began working for Goodyear in 1965 as a clerk in the company's Port Lavaca, Texas, store. Several years later, Portilla's brother, Reynaldo Reyes, became her supervisor, contrary to Goodyear's policy prohibiting employees from being managed by relatives. Although company representatives were aware of the relationship, the company took no action to enforce its policy against nepotism. In fact, Reyes continued to supervise Portilla for seventeen years.

Throughout her 22–year tenure with Goodyear, Portilla was repeatedly assured that she would keep her job with the company as long as she performed satisfactorily. In 1987, Goodyear informed Portilla that she and her brother were violating the company's anti-nepotism policy, and asked her to transfer to Houston as a result. Because her husband was an established shrimper in Port Lavaca, Portilla was unable to transfer to Houston. Portilla maintains that Goodyear fired her as a result; Goodyear asserts that Portilla quit.

Portilla brought suit against Goodyear for breach of contract, intentional infliction of emotional distress, negligence, fraud, breach of good faith and fair dealing, and duress. She sought various actual damages, exemplary damages, and attorney's fees.

The trial court granted summary judgment for Goodyear on the fraud and breach of good faith and fair dealing claims; the remaining actions were tried to a jury. The jury found in favor of Portilla on her breach of contract and negligence claims, and the court entered judgment on the verdict.

By its first point of error, Goodyear contends that the trial court erred by entering judgment for Portilla on her breach of contract claim, because no evidence showed a contract modifying Portilla's employment-at-will status. Its second point of error complains that if such a contract exists, it is unenforceable because it violates the Statute of Frauds.

The first point of error asserts no evidence supports the jury's answer to Question No. 1, which asked:

> Did Goodyear Tire & Rubber Company agree that it would not discharge Hortencia Portilla except for good cause?

■ When reviewing an attack on the legal sufficiency of the evidence, a "no evidence" point of error, we consider only the evidence and inferences that tend to support the jury's finding, and disregard all evidence and inferences to the contrary. *Responsive Terminal Sys., Inc. v. Boy Scouts of Am.,* 774 S.W.2d 666, 668 (Tex. 1989); *Southern States Transp., Inc. v. State,* 774 S.W.2d 639, 640 (Tex.1989).

Portilla relies on two types of evidence to support the finding that Goodyear agreed that she would not be discharged except for good cause: assurances from managers and supervisors that she would have a job

as long as she was doing a good job, and a personnel policy manual that provided that employees would be discharged only for good cause. Goodyear challenges the first on two grounds: that vague compliments on work performance cannot constitute an agreement for continued employment, and that the persons making such representations were without authority from Goodyear to bind the company.

Portilla and several of her past and present managers testified at trial. All of them testified that Portilla was promised that she would keep her job with Goodyear as long as she did a good job for the company. These supervisors included Jack Thompson, her store manager from 1968 to 1969, Gordon Forsythe, one of her store managers from 1972 to 1974, and Reynaldo Reyes, another of her store managers from 1972 to 1987. Joe Beasley, one of her assistant district managers from 1972 to 1974, was deceased at the time of trial, but several witnesses were able to testify about similar assurances he made to Portilla.

Portilla testified:

Q: I would like for you to tell me, please, exactly what your agreement with the Goodyear Company was about your employment.

A: That I would have a job as long as I make—done my job right. * * *

Q: Who told you that with Goodyear?

A: Mr. Beasley. Tony Lister. Mr. Thompson. Mr. Forsythe. Mr. Elkins. Mr. Ken Mooney. * * *

Q: When did they [the assistant district managers] tell you, Mrs. Portilla, that you have a job as long as you did your job right?

A: Well, all the time that they were coming to the store. * *

Q: How about your store managers, they were there every day, how often did they tell you?

A: Well, whenever we get that form 1257 or 1256, salesman something, . . . they would get it each month and he'd show . . . how much money I sold. * * *

Q: So, every time they looked at one of these forms, they told you, "Mrs. Portilla, you have a job as long as you did your job right?"

A: Well, every month, whenever they got that shelter.

Q: So, they told you at least once a month?

A: Well, I guess, whenever they wanted to tell me, ma'am.

* * * * * *

Q: Now, you are telling me that they also said that you have a job in Port Lavaca as long as you do a good job?

A: Yes, ma'am.

Goodyear complains that these representations are insufficient to constitute an agreement not to discharge Portilla because they were too vague to form an agreement; that these were mere compliments as to the quality of her job performance, the equivalent of, "That a girl" or "Keep up the good work." However, the jury was fully instructed on these matters and both parties urged their constructions of the evidence to the jury. We cannot say that those statements do not constitute some evidence of an agreement that Portilla would not be fired as long as her job performance was satisfactory.

■ The long-standing rule in Texas is that employment for an indefinite term may be terminated at will and without cause. *Winters v. Houston Chronicle Publishing Co.*, 795 S.W.2d 723, 723 (Tex. 1990); *Moore v. Attorney Gen.*, 820 S.W.2d 874, 877 (Tex.App.—Austin 1991, no writ). Absent a specific contract term to the contrary, an employee may quit or be fired without liability on the part of the employee or the employer, with or without cause. *East Line & R.R.R. Co. v. Scott*, 72 Tex. 70, 10 S.W. 99, 102 (1888); *Johnson v. Ford Motor Co.*, 690 S.W.2d 90, 93 (Tex.App.—Eastland 1985, writ ref'd n.r.e.); *Molder v. Southwestern Bell Tel. Co.*, 665 S.W.2d 175, 177 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.).

■ The parties may modify at-will employment by agreement, and the agree-

ment may be either written or oral.[1] If an employee can prove that those who were qualified to do so modified her employment-at-will status, continued employment becomes subject to the oral agreement. *Moore*, 820 S.W.2d at 877; *Johnson*, 690 S.W.2d at 93. What has been called a "satisfaction contract" is formed when the employer represents to the employee that the employee will not be discharged but for unsatisfactory performance. *Coker v. Wesco Materials Corp.*, 368 S.W.2d 883, 885 (Tex.Civ.App.—Eastland 1963, no writ); *Hardison v. A.H. Belo Corp.*, 247 S.W.2d 167, 168 (Tex.Civ.App.—Dallas 1952, no writ).

 The employee must also prove that the one who made the representations was the employer's agent and was acting within the scope of his authority. *Moore*, 820 S.W.2d at 877. Generally, when an agent acts within the scope of his apparent authority, he binds the principal as though the principal performed the action taken. *Ames v. Great Southern Bank*, 672 S.W.2d 447, 450 (Tex.1984); *Hall v. F.A. Halamicek Enters., Inc.*, 669 S.W.2d 368, 375 (Tex.App.—Corpus Christi 1984, no writ).

 The jury received instructions on authority, which were included with Question No. 1.[2]

A past Goodyear employee, Ken Mooney, who was a store manager trainee at the Port Lavaca store while Portilla worked there from 1969 to 1972, testified at trial that store managers possessed actual and apparent authority to assure her that she would not be terminated as long as she performed satisfactorily. The Assistant District Managers at the time Mooney was a store manager trainee, Joe Beasley and Tony Lister, repeatedly told Portilla that her job was secure, and Mooney testified that he was told to do the same. He stated that, "If the [assistant district managers] told you to do something, you know, that was practically written in granite, there." Mooney testified that while he was being trained as a store manager, he was taught to instill a sense of job security in the employees, as the company's ultimate goal for its employees was to train them to be store managers. He testified:

Q: As a store manager, could you promise an employee that as long as they did a good job they would always have a job?

A: I would make that statement, yes, sir.

Q: Okay. Do you think you had that authority?

A: Right.

Q: And, where do you think you got that authority from?

A: From what the A.D.M.R. had told me.

Q: Did you see it anywhere in writing?

A: No, sir.

Q: What A.D.M.R. told you that?

A: Joe Beasley and Tony Lister.

More than a scintilla of evidence exists to support the jury's implied finding of the authority of Goodyear's managers to modify Portilla's employment contract.

**1.** *Morgan v. Jack Brown Cleaners, Inc.*, 764 S.W.2d 825, 826 (Tex.App.—Austin 1989, writ dism'd) (employer promised employee that he would find her another job if her department closed); *Salazar v. Amigos Del Valle, Inc.*, 754 S.W.2d 410, 413 (Tex.App.—Corpus Christi 1988, no writ); *Ramos v. Henry C. Beck Co.*, 711 S.W.2d 331, 336–37 (Tex.App.—Dallas 1986, no writ); *Kelley v. Apache Prods., Inc.*, 709 S.W.2d 772, 774 (Tex.App.—Beaumont 1986, writ ref'd n.r.e.).

**2.** These instructions read,

2. Authority for another to act for a party must arise from the party's agreement that the other act on behalf and for the benefit of the party. If a party so authorizes another to perform an act, that other party is also authorized to do whatever else is proper, usual, and necessary to perform the act expressly authorized.

3. Apparent authority exists if a party (1) knowingly permits another to hold himself out as having authority or, (2) through lack of ordinary care, bestows on another such indications of authority that lead a reasonably prudent person to rely on the apparent existence of authority to his detriment. Only the acts of the parties sought to be charged with responsibility for the conduct of another may be considered in determining whether apparent authority exists.

Several of Portilla's managers testified that they assured her she would have her job as long as she performed satisfactorily. Portilla herself testified that it was her understanding she would not be terminated as long as she performed her job properly. That is evidence to support the jury's verdict that an oral employment contract existed between Portilla and Goodyear that allowed for her termination only upon a good faith determination that she was performing unsatisfactorily.

Goodyear also asserts that evidence of a Field Personnel Manual specifically stating the grounds on which an employee may be terminated supported the jury's finding that a contract existed. The personnel manual involved was one the store manager kept and maintained to aid him in personnel decisions, and was not a booklet or summary of policies distributed to employees.

Texas Courts hold that company handbooks and policy manuals by themselves, absent some other agreement or representation to the contrary, do not form an express employment contract, limiting the "at will" employment status.[3]

▮ A review of the record reveals that Goodyear's Field Personnel Manual was amended several times while Portilla was employed with the company. Appellee testified at trial that although a Field Personnel Manual was kept in her store, she never read it. She stated, "I didn't go reading the books. The only way I would read any papers would be if Rey would ask me to read them. But, I didn't go reading all what it said...." She said she did not know whether the book contained a procedure for filing complaints. Because Mrs. Portilla was unaware of the contents of the Field Personnel Manual and its provision that employees should be discharged only

for good cause, it was not an agreement between her and Goodyear.

However, some evidence supports the jury's finding that Mrs. Portilla had an oral employment contract with Goodyear stating the company would only fire her for good cause. Point of error one is overruled.

▮ Appellant's second point of error asserts that the Statute of Frauds, TEX.BUS. & COM.CODE ANN. § 26.01(b)(6) (Vernon 1987), precludes the creation of a proposed oral contract. If a contract can be performed within one year it is not within the Statute of Frauds. *Miller v. Riata Cadillac Co.*, 517 S.W.2d 773, 775 (Tex.1974); *Morgan*, 764 S.W.2d at 827; *McRae v. Lindale Indep. School Dist.*, 450 S.W.2d 118, 123–24 (Tex.Civ.App.—Tyler 1970, writ ref'd n.r.e.). When the agreement does not specify how long it will last, so as to be indefinite, the term of employment is not presumed to be longer than for one year, so the Statute of Frauds does not apply. *See Miller*, 517 S.W.2d at 775 (employee hired strictly at-will); *Morgan*, 764 S.W.2d at 826–27 (employee assured her job was protected); *McRae*, 450 S.W.2d at 123–24 (satisfaction contract); *Hardison*, 247 S.W.2d at 168–69 (satisfaction contract).

▮ When the agreement is to retain the employee until he retires, and the retirement will not occur within one year, the Statute has been held to apply to require a writing.[4] In these cases, oral assurances were given that the employee would have a job until he retired, or the employee construed the assurances to mean that he would remain employed until he retired. In each case, the employee was many years from retirement age. The Courts held that the contract must be in writing, as it could not be performed within one year.

3. *Day & Zimmermann v. Hatridge,* 831 S.W.2d 65, 66, (Tex.App.—Texarkana 1992); *Hicks v. Baylor Univ. Medical Center,* 789 S.W.2d 299, 302 (Tex.App.—Dallas 1990, writ denied); *Stiver v. Texas Instruments, Inc.,* 750 S.W.2d 843, 846 (Tex.App.—Houston [14th Dist.] 1988, no writ); *Benoit v. Polysar Gulf Coast, Inc.,* 728 S.W.2d 403, 406 (Tex.App.—Beaumont 1987, writ ref'd n.r.e.); *Vallone v. Agip Petroleum Co.,* 705

S.W.2d 757, 759 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.); *Molder,* 665 S.W.2d at 177.

4. *Schroeder v. Texas Iron Works, Inc.,* 813 S.W.2d 483, 489 (Tex.1991); *Stiver v. Texas Instruments, Inc.,* 750 S.W.2d 843, 846 (Tex.App.—Houston [14th Dist.] 1988, no writ); *Benoit,* 728 S.W.2d at 407; *Molder,* 665 S.W.2d at 176–77.

Appellants cite our recent case *Casas v. Wornick Co.*, 818 S.W.2d 466, 469 (Tex. App.—Corpus Christi 1991, writ granted), for the proposition that every satisfaction contract falls within the Statute of Frauds. In that summary judgment case, appellant, Casas, did not bring a cause of action for breach of contract, as here, but instead alleged, among other things, breach of the duty of good faith and fair dealing when she was terminated. The Court noted that appellant alleged in her petition that she was assured she would retain her job with the company as long as she performed satisfactorily. The Court then stated that an oral agreement not capable of performance within one year would be unenforceable under the Statute of Frauds. *Id.* at 469. The Court cites *Schroeder, supra,* 813 S.W.2d 483, also a case from this Court, when supporting the proposition.

In *Schroeder*, the appellant alleged that he had an employment contract based on representations his employers made. After telling his supervisor, a company vice president, that he was building a retirement home and wanted to be sure he would not be laid off shortly after he finished, the executive replied, "Don't worry. Go ahead and build it." The matter was discussed with the company president as well, who stated, "Go ahead and build it." Schroeder alleged that he had a contract until he retired. Because he was not eligible for retirement for some eight to ten years, the Court held the contract was not performable within one year and therefore was barred by the Statute of Frauds. *Casas* then relied on the Court's holding in *Schroeder* that the Statute barred a contract not performable within one year, but did not discuss whether Casas alleged that she had a contract until retirement, or any contract that would not be performable within one year.

Both *Casas* and *Schroeder* are distinguishable from the case at bar, because neither of those cases discuss whether the company representations to the employees created contracts. Both cases instead move to the issue of whether the alleged oral contracts satisfy the Statute of Frauds. Because neither case directly addresses the issue of oral modifications of at-will contracts, they are not dispositive here.

Portilla was assured repeatedly that she would retain her job as long as she performed satisfactorily. At no time did she contend that she presumed to have a job until she retired. None of the witnesses who testified at trial stated that Portilla had a job until she retired; rather, "Goodyear would take care of her if she took care of them."

■ Goodyear contends that because Portilla's damages evidence at trial was calculated to retirement age, Portilla interpreted this contract to extend to her retirement, which would not occur for several years, thus barring the oral contract vis-a-vis the Statute of Frauds. However, in *Hardison, supra,* 247 S.W.2d 167, the plaintiff alleged a satisfaction contract to extend for his life expectancy of 6.82 more years, praying for lost salary damages for those 6.82 years. The Court held that the defendant company improperly interpreted the petition to allege a contract for life. *Id.* at 168. Rather, the Court stated, "actually claimed, in short, is that the parties have entered into one of those familiar 'satisfaction' contracts...." *Id.* at 168. The Court held that the Statute of Frauds did not apply to such a contract. *Id.* at 168–69. The balance of the cases cited in this opinion which address alleged oral retirement contracts were all decided upon allegations and direct evidence that the plaintiff expected a job until retirement. None of the cases looked solely to the prayer for damages to determine whether the plaintiff alleged a contract until retirement. Following *Hardison*, the only dispositive decision here, merely requesting damages for a period greater than one year will not bring a cause of action for breach of an oral employment contract under the Statute of Frauds.

The agreement Portilla made with Goodyear was for an indefinite term, not necessarily to be performed in more than one year. An oral satisfaction contract such as this one, in which Portilla does not allege

that she would have her job until she retired, does not fall within, and is not barred by, the Statute of Frauds. Point of error two is overruled.

■ By its third point of error, appellant asserts that the trial court erred by submitting jury questions and entering judgment on Goodyear's negligent performance of the employment contract. A party may breach duties in tort or contract alone or simultaneously in both. *Southwestern Bell Tel. Co. v. DeLanney,* 809 S.W.2d 493, 495 (Tex.1991); *Jim Walter Homes, Inc. v. Reed,* 711 S.W.2d 617, 618 (Tex.1986); *Montgomery Ward & Co. v. Scharrenbeck,* 146 Tex. 153, 204 S.W.2d 508, 510 (1947). "The contract is mere inducement creating the state of things which furnishes the occasion of the tort." *Scharrenbeck,* 204 S.W.2d at 510. We look to the nature of the injury to determine which duty or duties are breached, and when the injury is only the economic loss to the subject of the contract itself, the action sounds in contract alone. *DeLanney,* 809 S.W.2d at 494; *Reed,* 711 S.W.2d at 618.

■ The injury Portilla suffered when Goodyear fired her was the loss of her job. No one contends that independently tortious conduct, such as a guard escorting her immediately from the premises, accompanied the discharge. *See Casas,* 818 S.W.2d at 466. Her termination was the proposed negligent performance of the contract "that she would have a job as long as she performed satisfactorily." Her injury was that created by the breach of contract, *i.e.,* the loss of her job. Appellant's third point of error is sustained. However, because the jury's finding of breach of contract has been upheld, and forms a basis for the judgment, this point of error is not dispositive.

By point four, appellant contends that the trial court erred by entering judgment for appellee on several other issues because they were dependent on the existence of an enforceable employment contract and none can be found here. These issues include waiver of the anti-nepotism and no-transfer policy, intentional infliction of emotional distress (we note that the jury

never answered the special question presented on this issue), and damages. However, because we have found an enforceable contract, addressing this point is not necessary to the final disposition of this case. *See* TEX.R.APP.P. 90(a). Point of error four is overruled.

■ By cross point, Portilla contends that the trial court erred when calculating her attorney's fees, and seeks a modification of the judgment to reflect the correct calculation. The jury found 40% of the recovery to be a reasonable attorney's fee. The trial court calculated the attorney's fees to be 40% of Portilla's actual damages plus pre-judgment interest. Portilla was awarded $396,000 in actual damages and $58,376.86 in pre-judgment interest. The court found 40% of these damages to be $181,512.88 and awarded that amount in attorney's fees.

Appellee contends that the 40% contingency fee should have been included as part of Portilla's total recovery for purposes of calculating fees, and 40% of the total recovery amount would make up attorney's fees. To illustrate, we assume that Portilla received $100 in actual damages plus prejudgment interest. Appellee requests that to determine her 40% fee, we consider the $100 to be a "subtotal" of Portilla's recovery. She contends that we must add the 40% attorney's fees ($40) to the subtotal, finding $140 in total recovery. We would then take 40% of that number to find attorney's fees of $56 and award the appellee a grand total of $156: $100 in damages plus $56 in fees. We disagree.

■ Claims for attorney's fees belong to the litigants, not to the attorneys. *Murrco Agency, Inc. v. Ryan,* 800 S.W.2d 600, 603 (Tex.App.—Dallas 1990, no writ); *Satellite Earth Stations East, Inc. v. Davis,* 756 S.W.2d 385, 387 (Tex.App.—Eastland 1988, writ denied); *see Streeter v. Thompson,* 751 S.W.2d 329, 331 (Tex.App.—Fort Worth 1988, no writ). Moreover, this Court has held that TEX.CIV.PRAC. & REM.CODE ANN. § 38.001 (Vernon 1986), the statute under which the appellee based her claim for attorney's fees, "envisions

that a party who recovers damages for breach of contract receives a full recovery plus a reasonable attorney's fee." *Rauscher Pierce Refsnes, Inc. v. Koenig,* 794 S.W.2d 514, 516 (Tex.App.—Corpus Christi 1990, writ denied). In *Aetna Casualty & Surety Co. v. Taff,*[5] the plaintiff's attorney was to receive ⅓ of "any recovery by plaintiff." The trial court found $3,500 to be reasonable attorney's fees. The Court of Appeals added this amount to the plaintiff's $6,339.20 damages judgment, finding the plaintiff entitled to a total recovery of $9,839.20. The Court then divided this total recovery by 1/3 to find $3,279.73 in attorney's fees. *Id.* at 904.

■■■ The purpose of awarding attorney's fees and taxing it against the losing defendant is to make the successful plaintiff whole. The winning plaintiff is entitled to the full damages suffered as a result of the defendant's breach of contract, and the plaintiff's recovery does not bear the burden of the costs necessarily incurred in enforcing his rights under the contract.

The calculation sought by Appellees has the effect of awarding attorney's fees on attorney's fees; that is, an additional 40% of their 40% attorney's fees, or an additional recovery of 16% of the whole. This is improper. The calculation to be used is to take the damages awarded to the plaintiff, with interest, and then apply the reasonable percentage to it, in order to discover the amount due the successful attorneys. To add the attorney's fees to the recovery and again compute the amount by applying the contingency percentage awards a percentage in excess of what the jury found to be reasonable. Appellee's cross point is overruled.

The judgment of the trial court is AFFIRMED.

**5.** 502 S.W.2d 903, 904 (Tex.App.—Waco 1973, writ ref'd n.r.e.).