**HARVILLE ROSE SERVICE, Plaintiff-Appellee,**

v.

**KELLOGG COMPANY, Defendant-Appellant.**

**No. 29319.**

United States Court of Appeals, Fifth Circuit.

Sept. 29, 1971.

Rehearing Denied Oct. 29, 1971.

Charles F. Potter, Tyler, Tex., J. Robert O'Brien, Kellogg Company, Battle Creek, Mich., for defendant-appellant; Spruiell, Lowry, Potter, Lasater & Guinn, Tyler, Tex., of counsel.

Donald Carroll, Mike A. Hatchell, Tyler, Tex., for plaintiff-appellee; Ramey, Brelsford, Flock, Devereux & Hutchins, Tyler, Tex., of counsel.

Before COLEMAN, INGRAHAM and WILKEY,* Circuit Judges.

INGRAHAM, Circuit Judge.

This diversity suit was brought by plaintiff-appellee Harville Rose Service against Kellogg Company, defendant-appellant, for the breach of a contract covering a rose premium advertising campaign to be used by appellant in the sale of its product, Kellogg's Corn Flakes. The principal issue here involved relates to application of the "parol evidence" rule. Because we find that this case calls for application of the parol evidence rule under Texas law, we reverse the judgment of the district court.

Appellee Harville Rose Service was engaged in the business of growing, processing and merchandising rose bushes. Beginning in 1955 appellant Kellogg began to feature on certain bran cereal cartons a premium offer of Harville Rose

---

* Of the District of Columbia Circuit, sitting by designation.

Service, whereby the purchaser of the cereal carton could obtain a rose bush by compliance with the terms printed thereon. This practice continued through the year 1968, at which time the current dispute arose.

Mrs. Neal Harville, who for the most part ran the rose service, testified that the relationship between the parties had always been pleasant until the 1968 promotion. However, from April to July of 1967, when negotiations were taking place for the 1968 promotion, she testified that the atmosphere was not the same as before and that the Kellogg people were not as friendly or receptive.

Mrs. Harville feared that the year 1968 would not be a profitable one for her business and thus asked for a higher price to be put on the roses. The Kellogg agents strongly disapproved of this and made various demands of their own. These included a 1¢ rebate on all rose bushes sold and a promotion on a "non-commit" basis. In other words, unlike all prior years Kellogg was refusing to guarantee that she would sell a certain number of rose bushes. Mr. and Mrs. Harville expressed the realization that this would leave them "at their [Kellogg's] mercy." Appellant Kellogg, however, soon informed appellee that it had decided not to carry on the promotion at all, mainly because even on a "non-commit" basis the price was too high. Nevertheless, Mrs. Harville persisted, and sent to appellant suggestions for new packaging, lay-out, etc. She stated that Kellogg's agent, Mr. Howells, finally offered by telephone to place her premium on a side panel of Kellogg's Corn Flakes. Although the basic details were worked out, i. e., the price, the location on the side panel and the product, Mrs. Harville testified that she realized that there was to be a written purchase order and that this would establish the "basic principles" of the agreement.

There had always been a confirming order in writing in their past dealings. The order for the 1968 campaign was executed by the Kellogg Company and sent on November 17, 1967. Mrs. Har-

ville, having apparently misplaced the order, called a Kellogg representative to discover why she had not received the order. Having been informed that it had been sent, she located, signed and returned it in January 1968.

Appellee asserted in the trial below that the oral discussions in July 1967 gave rise to binding agreements which were not included or merged into the written purchase order. Appellee alleged that the following oral promises were made and subsequently breached.

(1) That with certain exceptions the 1968 promotion would be handled "as it had always been." Appellee interpreted this promise to include television support.

(2) That the appellant Kellogg would "do a good job" in the promotion.

(3) That there would be nothing on the back panel of the corn flakes package which would "detract from" the rose bush offer.

The district court permitted the jury to determine whether or not the written order was intended to supersede the alleged oral agreement. The jury returned a verdict in favor of Harville Rose Service in the amount of $132,000.

On this appeal appellant asserts that the district court erred in holding that a written purchase order contract signed by appellee and appellant did not supersede and merge any prior oral agreements and negotiations between the parties, and in submitting to the jury the question of the merger of prior oral agreements into the written purchase order contract. Appellee primarily contends that whether or not the written purchase order was the sole memorial of the parties' agreement was a matter of intent properly submitted to the jury and that extrinsic evidence is admissible to establish that the writing is not the sole memorial.

The written purchase order dated November 17, 1967, contained the following introductory paragraph:

"Please enter our order for the following, subject to terms and conditions on face and back hereof."

Then follows paragraph 1 which, among other things, identified six varieties of roses.

Paragraph 2 contained the following:

"You shall have at least two hundred and fifty thousand premium items available for orders from customers of Kellogg Company products as set forth below by January 1, 1968 and you shall be ready to start shipping premium items to customers of Kellogg Company's products on that date."

Paragraph 3 provided:

"Kellogg Company will offer the 'Queen of the Garden' promotion on the side panel of certain of its cereal cartons which will be shipped (subject to Kellogg Company's revisions) from approximately December 1, 1967 to January 31, 1968."

Paragraph 4 stated:

"Kellogg Company's sole responsibilities hereunder are set forth in the preceding paragraph."

On the front page, near appellant's signature, was the following:

"The terms and conditions on the back hereof are a part of this offer to purchase. The terms and provisions of this offer shall constitute the entire contract for the purchase and sale of the goods and/or services specified above. No oral commitments or changes are authorized." [1]

It is patently clear that Mrs. Harville read these provisions of the contract and was quite familiar with them.

This court is bound in this diversity case to apply the parol evidence rule as the state court would. *Freeman v. Continental Gin Co.*, 381 F.2d 459, 463 (5th Cir., 1967). Appellee's case is foreclosed primarily because of an interworking of the doctrine of merger from the law of contracts, and the parol evidence rule, which is not really a rule of evidence but rather a substantive rule from the law of contracts. Generally, the doctrine of merger holds that all prior and contemporaneous negotiations and promises are absorbed or merged into a written contract. This occurs when the oral product of the negotiations is subsequently reduced to writing, and by virtue of the writing and merger, no prior or contemporaneous statements can be shown to vary or contradict the writing. *Don Drum Real Estate Co. v. Hudson*, 465 S.W.2d 409, 412 (Tex.Civ.App., Dallas, 1971, no writ); *Albers v. Schumacher Co.*, 314 S.W.2d 852 (Tex.Civ. App., Waco, 1958, no writ). The parol evidence rule excludes evidence of prior or contemporaneous negotiations and representations that are introduced to vary, add to, or contradict the terms of a valid written instrument, which the rule presumes embodies the complete agreement between the parties. *Hubacek v. Ennis State Bank*, 159 Tex. 166, 317 S.W.2d 30 (1958); *Bradford v. Brady*, 413 S.W.2d 780 (Tex.Civ.App., Dallas, 1967, no writ). See also 23 Tex.Jur.2d, Evidence, § 342 (1961).

The court, in *Arkansas Oak Flooring Co. v. Mixon*, 369 S.W.2d 804, 806–807 (Tex.Civ.App., Texarkana, 1963, no writ), faced with a question concerning the merger of negotiations and alleged agreements into a written instrument, reviewed leading Texas cases and authorities as follows:

"Judges and legal scholars of the highest rank have had occasion to re-

---

1. On the back of the front page were the following clauses:

"To the extent that this order may constitute an acceptance or confirmation of any offer, proposal or contract, by or with Seller, said acceptance or confirmation is expressly conditioned upon the assent of Seller to all of the provisions hereof and to the deletion from said offer, proposal or contract, of any and all provisions which are not herein specifically accepted by purchaser. Acceptance of this order shall constitute assent.

"No variation in any of the terms, conditions deliveries, prices, quality, quantity, and specifications of this order, irrespective of the wording of Seller's acceptance or invoice, will be effective without Purchaser's written consent."

mark on the seemingly indefinite and uncertain application of the rule of merger by the courts. The Supreme Court of this State in Hubacek v. Ennis State Bank, 159 Tex. 166, 317 S.W. 2d 30, discusses the parol evidence rule, its nature and application to the facts of the case before it. In doing so the court gave approval to rules and procedures that should be observed in the present case. The following is extracted for that purpose, to-wit:

'The parol evidence rule is not a rule of evidence at all, but a rule of substantive law. McCormick and Ray, Texas Law of Evidence, 2d., § 1601; 20 Am.Jur., Evidence, § 1100; 32 C.J.S. Evidence § 851.

'When parties have concluded a valid integrated agreement with respect to a particular subject matter, the rule precludes the enforcement of inconsistent prior or contemporaneous agreements. 17 Tex.Jur., Evidence §§ 352, 353 McCormick and Ray, supra, § 1601.

'On the other hand, the rule does not preclude enforcement of prior or contemporaneous agreements which are collateral to an integrated agreement and which are not inconsistent with and do not vary or contradict the express or implied terms or obligations thereof. McCormick and Ray, supra, § 1631; 17 Tex.Jur., Evidence, § 370; Williston on Contracts, Rev.Ed., Vol. 3, § 642; Wigmore on Evidence, 3rd Ed., Vol. IX, § 2430, Page on Contracts, 2d Ed., Vol. 4, § 2191; Corbin on Contracts, Vol. 3, § 594.

\*   \*   \*   \*   \*   \*

'The rule with respect to proof and enforcement of collateral agreements is thus stated in the Restatement of the Law of Contracts, Vol. 1, § 240:

' "(1) An oral agreement is not superseded or invalidated by a subsequent or contemporaneous integration, nor a written agreement by a subsequent integration relating to the same subject-matter, if the agreement is not inconsistent with the integrated contract, and

' "(a) is made for separate consideration, or

' "(b) is such an agreement as might naturally be made as a separate agreement by parties situated as were the parties to the written contract." '

"In Professor Charles T. McCormick's 'Handbook of the Law of Evidence' (McCormick on Evidence), p. 441, Sec. 216, following a review of the many opinions expressed by courts and text writers upon the subject is this suggestion: 'Let the trial judge, after hearing the testimony as to the alleged oral agreement, including the evidence of substantiating circumstances, compare it with the terms of the writing, and if he considers that it is one which parties situated as these were would "naturally and normally" have recited in the writing itself, had they made it and intended it to stand, then he will reject the evidence thus tentatively heard. On the other hand, if (in the terms of the Restatement) he concludes that the alleged oral pact is "such an agreement as might normally be made as a separate agreement by parties situated as were the parties to the written contract," then he will allow the evidence to go to the jury.' "

Applying the standard recited in *Hubacek* and the Restatement of the Law of Contracts to the instant case, it is clear that the oral promises which appellee alleges were made are inconsistent with the written purchase order which specifically purports to be complete and which deletes all prior oral agreements. See, e. g., Ragland v. Curtis Mathes Sales Co., 446 S.W.2d 577, 579 (Tex.Civ.App., Waco, 1969, no writ):

"The present written contract recites it is intended to 'set forth the relations' of the parties; that it contains their 'full agreement' and there are no others. Under these circumstances, the purported agreement

which is the subject of the extrinsic evidence is inconsistent with the written contract, and the exception to the rule of exclusion is not available. Inner Shoe Tire Co. v. Williamson, Tex. Civ.App., 240 S.W. 330; Adams v. Bailey Transportation Co., Tex.Civ. App., 334 S.W.2d 591, writ ref. n. r. e.; Inner Shoe Tire Co. v. Treadway, (5 Cir. 1923), 286 F. 838; 32A C.J.S. Evidence § 999, pp. 521, 523.

"The parol or extrinsic evidence rule 'is particularly applicable where the writing contains a recital that it contains the entire agreement between the parties' and the other recited provisions in the present written agreement."

Furthermore, there was no separate consideration for the alleged oral agreements and the alleged oral statements were not such as would be normally made as separate agreements.

The facts of the case *sub judice* thus cry out for application of the parol evidence rule and the doctrine of merger as Texas courts have applied them many times in the past. See, e. g., Martin v. Coastal States Gas Producing Co., 417 S.W.2d 91 (Tex.Civ.App., Eastland, 1967, no writ); Aero-Gas Refining Co. v. Fisk Tire Co., 137 S.W.2d 191, 193 (Tex.Civ. App., El Paso, 1940, writ ref'd). Although oral negotiations are often the basis for a written contract, once they are reduced to writing with a merger clause the parties are presumed to have selected from these negotiations only the promises and agreements for which they choose to be bound. Otherwise the most carefully considered written documents could be destroyed by oral statements made during the ordinary give and take of negotiations.[2]

As we have indicated above, the appellee, facing growing competition and rising costs, found the situation in 1968 very different from past years and very difficult. This year marked the first time that the promotion had been relegated to a side panel of appellant's product. It was also the first time it was put on Kellogg's Corn Flakes, the first time the cost of the rose bushes had been as high, and the first time that two box tops were required instead of one in order for the purchaser to obtain appellee's product. Mrs. Harville, perhaps trying to remain in appellant's good graces, never complained about the lack of television support until it was too late. On the other hand, on two occasions Mrs. Harville requested that the number of rose bushes she be required to have available be reduced, and on both occasions she requested a written change order.

While not dispositive, we also note that Mrs. Harville attempted to set up another premium promotion with Kellogg for the spring of 1969, and in her proposal letter to Mr. Howells of the Kellogg Company she made no accusations of a breach of contract and did not suggest that Kellogg was responsible for the financial losses of Harville Rose Service. It was after appellee received a final turn-down on this 1969 proposal that the complaint in the instant case was filed in the district court.

Since there is no evidence of fraud, accident or mistake relating to the contract between the parties, and in light of the parol evidence rule as applied in this opinion, we hold that the district court was required to withhold from the jury's consideration the evidence of the alleged oral promises. Accordingly, the judgment of the district court is reversed and the cause is remanded for entry of judgment in favor of defendant-appellant.

Reversed and remanded.

---

2. For example, appellee claims a breach because a "Moon Garden" display on the back panel of the cereal carton appealed to children and cost less money than the rose bushes and thus this "detracted from" appellee's offer on the side panel. This argument has no merit whatsoever. Mrs. Harville certainly could not expect that the back panel of the cereal carton would be left blank. Furthermore, it appears from the record that 70% of the consumers of Kellogg's Corn Flakes are adults and not children.