**Joey W. JOHNSON, Appellant,**

v.

**FORD MOTOR COMPANY, INC., Appellee.**

No. 11–84–143–CV.

Court of Appeals of Texas, Eastland.

April 11, 1985.

Rehearing Denied May 16, 1985.

C. Michael Moore and Julie M. McCoy, Locke, Purnell, Boren, Laney & Neely, Dallas, for appellant.

Cherie L. Adams and Stephen F. Fink, Thompson & Knight, Dallas, for appellee.

DICKENSON, Justice.

Plaintiff appeals the order of dismissal which was entered after he declined to amend his petition when the trial court sustained special exceptions and found that "plaintiff has failed to allege a claim on which this Court can grant relief." We reverse the order of dismissal and remand the cause for trial.[1]

The rule of appellate review which is applicable to this situation was recently stated in *City of Round Rock v. Smith,* 687 S.W.2d 300 (Tex.1985):

On appeal a judgment of dismissal for failure to state a cause of action will be sustained only if the allegations of the pleadings *taken as true and construed most favorably in behalf of the pleader*

---

1. This appeal was transferred from the Dallas Court of Appeals to this Court on April 26, 1984.

See TEX.REV.CIV.STAT.ANN. art. 1738 (Vernon Supp.1985).

do not state a cause of action. (Emphasis added)

See also *Wheeler v. White*, 398 S.W.2d 93 at 95 (Tex.1965); *Connally v. Continental Southland Savings & Loan Ass'n*, 121 Tex. 565, 51 S.W.2d 293 at 298 (Tex. Comm'n App.1932, opinion adopted).

The Fourth Amended Original Petition which was filed by Joey W. Johnson seeks damages from Ford Motor Company, Inc. In Count One of the petition (paragraphs 15 through 25) plaintiff alleges that Ford breached an express contract that he would not be terminated "except for good cause." In Count Two (paragraphs 26 through 30) plaintiff alleges that Ford breached an "express satisfaction contract." In Count Three (paragraphs 31 through 36) plaintiff alleges that Ford breached an "implied employment contract." In Count Four (paragraphs 37 through 40) plaintiff alleges that Ford committed the "tort of bad faith." In Count Five (paragraphs 41 through 44) plaintiff alleges that Ford is guilty of fraud. Plaintiff seeks recovery of $1,181,826.94 for past and future loss of earnings and employment benefits. Plaintiff also seeks exemplary damages in the sum of $3,500,000.00.

Ford filed separate exceptions to each Count of the petition, alleging that plaintiff failed to state a claim upon which relief may be granted. Ford's position is that plaintiff was an "at will" employee who could be fired, with or without just cause, at the employer's option.

We turn now to plaintiff's petition to see if it alleges facts which, "taken as true and construed most favorably in behalf of the pleader," state a cause of action upon which relief may be granted. The petition alleges:

\* \* \* \* \* \*

3. ... at all relevant times, (Phil) Davison was a duly authorized agent, representative and employee of Ford and was acting in the course and scope of his employment with Ford. Plaintiff maintains and alleges that the words and conduct of Davison, as well as the other Ford management personnel identified below, are binding upon Ford and give rise to certain legal rights of Plaintiff and certain legal obligations of Ford as more particularly described below.

4. Plaintiff was employed by Ford from March of 1964 until December of 1981 pursuant to an oral contract for an indefinite term. As described more particularly below, Plaintiff's oral employment contract was subsequently modified by the parties to provide that Plaintiff would not be terminated except for good reason, and that his employment with Ford would continue so long as his work was satisfactory. Plaintiff began working for Ford in the mailroom and was subsequently promoted to warehouse order picker, parts order clerk, and warehouse foreman, the position he occupied at all material times hereto.

5. Prior to June of 1979, Plaintiff worked as warehouse foreman under several different supervisors. Throughout his tenure, Plaintiff received satisfactory plus and excellent ratings on his periodic job performance reviews.

6. On or about March of 1979, Davison became the depot manager at the Ford plant in Dallas.

7. Shortly after Davison's arrival, he began regularly socializing with Plaintiff and other Ford employees. During that period of time, Plaintiff got excellent and satisfactory plus job performance reviews from Davison.

8. Subsequently, Plaintiff stopped socializing with Davison. Shortly thereafter, Plaintiff's periodic ratings declined.

9. On one occasion prior to Plaintiff's termination, Davison told Plaintiff and another Ford employee that he (Davison) was concerned that Plaintiff knew too much about Davison's personal life, particularly Davison's relationship with a woman named Debra Bahr.

\* \* \* \* \* \*

13. ... on or about December 11, 1981, ... he met with Davison and Luther Hurst, the warehouse manager, in

Davison's office. Davison told Plaintiff that unless he resigned, Ford would terminate him without any benefits and tell prospective employers that he had been terminated for drinking on company premises. Davison agreed to give Plaintiff a good reference and not to mention the alleged drinking incident if he would resign instead.

14. Acting under duress and in the belief that he would receive a bad job reference unless he did otherwise, Plaintiff followed Hurst's instructions and wrote "I voluntarily resign" on a sheet of paper. Hurst then told him that he had made "a wise decision" and escorted him off the premises. Plaintiff would show that in truth and in fact, he was "terminated" by Ford and did not "voluntarily resign."

    \*    \*    \*    \*    \*    \*

16. Plaintiff would show that subsequent to his initial employment by Ford he was repeatedly told by Ford management personnel that he would not be terminated except for a good reason, and that his employment with Ford would continue so long as his work was satisfactory and so long as he did his job.

17. On several occasions subsequent to Plaintiff's initial employment by Ford there was concern among the salaried personnel that as a result of Ford cutbacks salaried employees might be laid off. Plaintiff would show that this situation arose when Phil Koze was depot manager of the Dallas Tractor Division. Mr. Koze held a meeting of the salaried warehouse employees and said words to the effect that employees with Plaintiff's length of service would not be laid off as long as they were doing their job.

18. On other occasions statements Ford management personnel told Plaintiff that dismissal for a violation of Ford rules would have to be for a very good reason, such as stealing or falsifying records. Further, Mr. Koze assured Plaintiff and other Ford employees that any discipline would be progressive in nature.

19. Further, it was Plaintiff's understanding throughout his employment at Ford, based upon the statements of Ford's management personnel and based upon his training as a salaried Ford supervisor, that Ford would not terminate a salaried employee unless Ford had a good reason for doing so and unless there was adequate evidence of the alleged rule violation. Plaintiff was told that as a Ford supervisor he would get into trouble if he tried to discipline a Ford employee working under him without conducting an adequate investigation and obtaining evidence to back up the charge.

20. The type of statements made to Plaintiff by Mr. Koze were also made by subsequent Ford depot managers such as Doug Coats and John Rissenwebber. In fact, Mr. Rissenwebber told Plaintiff that because of Plaintiff's length of service with Ford (at the time in excess of ten years) Ford would not terminate Plaintiff's employment by layoff and that Plaintiff would have to commit a very drastic violation of the Company rules before Ford would have a good reason to terminate his employment.

21. Further, Plaintiff would show that on several occasions Ford depot manager Phil Davison told Plaintiff words to the effect that as long as Plaintiff performed his job duties, his employment with Ford would continue.

22. Plaintiff would show that Ford, by and through its authorized management personnel, agents and representatives acting in the course and scope of their duties for Ford, such as Phil Davison and other Ford managers referenced above, represented, promised, and expressly agreed that Plaintiff's employment with Ford would not be terminated except for good cause. Plaintiff would show that through the words, representations, promises and conduct of Ford management the original employment contract between Plaintiff and Ford was expressly modified to provide that Plaintiff would not be terminated except for

good cause. Plaintiff would show that the Ford managers referenced above had actual or apparent authority to create such an express contract and that Plaintiff, as a Ford employee, relied upon the words, representations, promises and conduct of these Ford managers, and continued working for Ford rather than seeking employment and greater job security elsewhere, all to his detriment.

23. However, on or about December 11, 1981, Plaintiff's employment with Ford was summarily and arbitrarily terminated without good cause which resulted in a breach of the express contract herein alleged. Plaintiff would show that his termination was not founded on good or just cause but, in fact, was the result of wholly unfounded charges of drinking on the job which were fabricated by Davison yet formed the basis for Ford's decision to terminate Plaintiff. Plaintiff would show that under the circumstances he was not terminated for good or just cause as expressly agreed by Ford and, therefore, Ford has breached the express contract alleged herein.

\* \* \* \* \* \*

■ We agree with *Maus v. National Living Centers, Inc.*, 633 S.W.2d 674 at 675 (Tex.App.—Austin 1982, writ ref'd n.r.e.), that:

> Generally speaking,[2] Texas subscribes to the traditional rule that, *absent a specific contract term to the contrary,* either the employer or the employee may terminate the employment relationship at any time, for any reason. (Emphasis added)

See also *Sabine Pilot Service, Inc. v. Hauck*, 687 S.W.2d 733 (Tex.1985); *East Line & R.R.R. Co. v. Scott*, 72 Tex. 70, 10 S.W. 99 at 102 (1888).

■ Here the pleadings allege "specific contract term(s) to the contrary," and we must take those allegations as true. We sustain the first point of error,[3] and we need not discuss the other points of error. The trial court erred in dismissing plaintiff's lawsuit. If plaintiff can prove a modification of his "employment at will" by oral agreements with Ford supervisory personnel who had authority to make the modification, his continued employment was no longer "at will" but was subject to the oral agreement that he "would not be terminated except for good cause." See *St. Louis, B. & M. Ry. Co. v. Booker*, 5 S.W.2d 856 at 859 (Tex.Civ.App.—Galveston 1928), *cert. denied*, 279 U.S. 852, 49 S.Ct. 348, 73 L.Ed. 995 (1929):

> An employer and his employees have the right to agree with each other that the employer will not unjustly discharge the employee and will compensate the employee for the time lost by an unjust discharge and such contract is not invalid because of the fact that the employee has not agreed to remain in the service for any definite length of time....
>
> (T)he continued performance of the duties of their employment is a valuable consideration....

See also *Mansell v. Texas & P. Ry. Co.*, 135 Tex. 31, 137 S.W.2d 997 at 999 (Comm'n App.1940, opinion adopted).

The trial court's order of dismissal is reversed, and the cause is remanded for trial.

---

**2.** *Maus* notes that there is a statutory limitation on the general rule that an at-will employee may be discharged without cause at any time. See TEX.REV.CIV.STAT.ANN. art. 8307c (Vernon Supp.1985) which provides that an employee cannot be discharged because he has filed a worker's compensation claim or has testified in such a proceeding.

**3.** Plaintiff argues in Point One that: "The trial court erred in sustaining Ford's special exceptions with respect to paragraphs 15 through 25 of Plaintiff's Fourth Amended Original Petition because Johnson has stated a claim against Ford for breach of an express employment contract."