Jan RAYBURN, Plaintiff,

v.

The EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, Defendant.

Civ. A. No. H–91–2155.

United States District Court,
S.D. Texas.

Nov. 9, 1992.

---

G.P. Hardy, III, Houston, Tex., for plaintiff.

Richard L. Josephson, Houston, Tex., for defendant.

## MEMORANDUM AND ORDER

CRONE, United States Magistrate Judge.

Pending before the Court is the Motion for Summary Judgment filed by Defendant The Equitable Life Assurance Society of the United States ("Equitable"). (Docket Entry # 22). Equitable seeks summary judgment on Plaintiff Jan Rayburn's ("Rayburn") claims that her employment with Equitable was wrongfully terminated.

Jurisdiction in this matter is proper under 28 U.S.C. §§ 1332(a)(1) and 1446. The parties consented to have a United States Magistrate Judge conduct all further proceedings in this case, including the trial and entry of judgment, pursuant to 28 U.S.C. § 636(c) (Docket Entry # 28). The case was referred to the undersigned magistrate judge.

After review of the pending motion, the submissions, the pleadings, and the applicable law, this court finds that Equitable's Motion for Summary Judgment should be GRANTED as there is no genuine issue of material fact and Equitable is entitled to judgment as a matter of law.

## I. Background.

In February 1980, Rayburn was hired by Equitable and began work as an insurance agent in Tulsa, Oklahoma. She signed an agreement with Equitable dated February 1, 1980 ("the 12th Edition contract"). In July 1980, Rayburn transferred to Houston, Texas, where she remained during the balance of her tenure with Equitable. In 1982, she signed an agreement dated November 1, 1982, which superseded the prior agreement ("the 14th Edition contract"). The latter contract was in effect throughout the remainder of her employment. Equitable terminated Rayburn's employment by letter dated July 11, 1989, effective August 11, 1989.

Rayburn claims that her discharge: (i) violated the terms of an express written contract; (ii) violated the terms of an oral implied-in-fact contract; (iii) was wrongful under the common law of the State of Texas; (iv) violated a covenant of good faith and fair dealing; and (v) caused her emotional distress and mental anguish.

## II. Analysis.

### A. Written Contract.

Texas courts have long recognized that, absent a specific contract term, statutory prohibition, or public policy consideration to the contrary, employment relationships are terminable at will by either party. *Schroeder v. Texas Iron Works, Inc.,* 813 S.W.2d 483, 489 (Tex.1991); *Winters v. Houston Chronicle Pub. Co.,* 795 S.W.2d 723 (Tex.1990); *East Line & R.R.R. Co. v. Scott,* 72 Tex. 70, 75, 10 S.W. 99, 102 (1888); *Hicks v. Baylor Univ. Med. Center,* 789 S.W.2d 299, 301 (Tex.App.—Dallas 1990, writ denied); *Lumpkin v. H & C Communications, Inc.,* 755 S.W.2d 538, 539 (Tex.App.—Houston [1st Dist.] 1988, writ denied). The employment-at-will doctrine permits an employer to terminate an employee at any time for a good reason, a bad reason or no reason at all. *Perez v. Vinnell Corp.,* 763 F.Supp. 199, 200 (S.D.Tex.1991); *Rodriguez v. Benson Properties, Inc.,* 716 F.Supp. 275, 277 (W.D.Tex.1989); *Wal–Mart Stores, Inc. v. Coward,* 829 S.W.2d 340, 342 (Tex.App.—Beaumont 1992, writ denied).

Rayburn contends that the terms of the 14th Edition contract specifically prohibited her discharge. However, the contract, which is of no specific duration, expressly recognizes that either party may

terminate the relationship at will, as set forth in paragraph XIII, entitled "Terminations." It provides:

> Unless otherwise terminated, this agreement may be terminated by either party by a notice in writing delivered personally or mailed to the other party at the last known address, at least thirty days before the date therein fixed for such termination.

Rayburn admitted at deposition that under the contract's termination provision, Equitable could terminate the agreement for any reason or no reason upon thirty days' notice. (Rayburn Dep. at 59–60). She also admitted that she received the proper thirty days' notice by letter dated July 11, 1989, and that she was terminated on August 11, 1989. (*Id.* at 151; Rayburn Aff. ¶ 2). Thus, Rayburn's express contract claims are contradicted by the terms of the contract itself.

Rayburn makes a convoluted argument that other provisions of the contract override the specific clause concerning termination. She asserts that by continuing to counsel customers to whom she had sold policies after her termination, she remained "in the service" of Equitable and thereby became vested in the right to receive certain renewal commissions. Therefore, she reasons, her termination was improper under the terms of the contract.

This court finds the contract to be unambiguous. Rayburn's argument is circular and contravenes the plain language of the agreement. Paragraph III of the contract, which deals with commissions and compensation, states:

> Upon termination of this Agreement, however, service fees and additional compensation, if any, shall no longer be allowed, and renewal commissions shall be allowed only as provided in the vesting provisions at Paragraph IV below.

Thus, after termination, Rayburn was entitled to receive renewal commissions only if they had vested in accordance with the terms of the contract. Paragraph IV, entitled "Vesting of Commissions," sets forth three circumstances in which renewal commissions become vested. In addition to situations where an agent reaches the age of sixty-five or dies while employed by Equitable, renewal commissions vest upon

> [c]ompletion of 12 years of continuous service with The Equitable, or 10 years of continuous service with The Equitable and the attainment of $120,000 in production credits. Any period under agreement as an Agent with or in the service of The Equitable or any of its subsidiaries immediately preceding this Agreement or immediately following its termination shall be deemed part of such service.

It is undisputed that Rayburn, who had not reached sixty-five at the time of her termination, was employed as an agent by Equitable for only nine and a half years. Therefore, none of the circumstances in which renewal commissions become vested under the contract ever came into play.

Rayburn cannot satisfy the ten-year service requirement by including time she spent counseling policyholders after her termination. Equitable is not accountable for any efforts Rayburn may have made on its behalf after she was told both orally and in writing that she was discharged. Rayburn does not allege that anyone at Equitable authorized her to service these customers or even knew what she was doing. These efforts were purely gratuitous on her part. Under these circumstances, Rayburn is not entitled to relief. *See Peko Oil USA v. Evans,* 800 S.W.2d 572, 578 (Tex.App.—Dallas 1990, writ denied); *Blakeley v. Fresno Oil Co.,* 208 S.W.2d 902, 907 (Tex.Civ.App.—Fort Worth 1948, no writ).

Moreover, if her right to receive renewal commissions had vested, it would not prevent her discharge. Termination from employment and the vesting of renewal commissions are entirely separate concepts under the contract. Vesting is valuable because it permits an agent to continue to receive commissions after he or she terminates; it in no way limits termination rights, either by the agent or Equitable. Therefore, Rayburn's arguments that her discharge violated the terms of the written contract are without merit.

### B. Oral Contract.

Rayburn also asserts that certain representations made by representatives of Equitable preclude her termination. Under the law of Texas, there are conflicting views about the enforceability of oral agreements purporting to limit an employer's right to terminate an employee. The Texas Supreme Court has not spoken on this issue. One line of authority holds that any agreement limiting employment at will must be in writing. *See, e.g., Conaway v. Control Data Corp.,* 955 F.2d 358, 361 (5th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 186, 121 L.Ed.2d 131 (1992); *Perez,* 763 F.Supp. at 200; *Rodriguez,* 716 F.Supp. at 277; *Bowser v. McDonald's Corp.,* 714 F.Supp. 839, 840–42 (S.D.Tex.1989); *Wilhite v. H.E. Butt Co.,* 812 S.W.2d 1, 5 (Tex.App.—Corpus Christi 1991, no writ); *Lumpkin,* 755 S.W.2d at 539; *Stiver v. Texas Instruments, Inc.,* 750 S.W.2d 843, 846 (Tex.App.—Houston [14th Dist.] 1988, no writ); *Benoit v. Polysar Gulf Coast, Inc.,* 728 S.W.2d 403, 406 (Tex.App.—Beaumont 1987, writ ref'd n.r.e.); *Webber v. M.W. Kellogg Co.,* 720 S.W.2d 124, 127 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.).

Another line of authority holds that oral agreements restricting an employer's right to discharge an employee are enforceable as long as the oral agreements do not violate the statute of frauds.[1] *See, e.g., Zimmerman v. H.E. Butt Grocery Co.,* 932 F.2d 469, 471 (5th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 591, 116 L.Ed.2d 615 (1991); *Pruitt v. Levi Strauss Co.,* 932 F.2d 458, 463 (5th Cir.1991); *Karp v. Fair Store, Inc.,* 709 F.Supp. 737, 742 (E.D.Tex.1988), *aff'd,* 914 F.2d 253 (5th Cir. 1990); *Goodyear Tire & Rubber Co. v. Portilla,* 836 S.W.2d 664 (Tex.App.—Corpus Christi 1992); *Moore v. Office of the Attorney General,* 820 S.W.2d 874, 877

(Tex.App.—Austin 1991, no writ); *Winograd v. Willis,* 789 S.W.2d 307, 311 (Tex. App.—Houston [14th Dist.] 1990, writ denied); *Morgan v. Jack Brown Cleaners, Inc.,* 764 S.W.2d 825, 827 (Tex.App.—Austin 1989, writ denied); *Ramos v. Henry C. Beck Co.,* 711 S.W.2d 331, 336 (Tex.App.—Dallas 1986, no writ); *Kelley v. Apache Products, Inc.,* 709 S.W.2d 772, 774 (Tex. App.—Beaumont 1986, writ ref'd n.r.e.); *United Transp. Union v. Brown,* 694 S.W.2d 630, 633 (Tex.App.—Texarkana 1985, writ ref'd n.r.e.); *Johnson v. Ford Motor Co.,* 690 S.W.2d 90, 93 (Tex.App.—Eastland 1985, writ ref'd n.r.e.). Under this line of authority, to succeed on a wrongful discharge claim, the employee must prove an oral modification of his employment-at-will status by a person who had authority to make the modification. *Portilla,* 836 S.W.2d 664; *Moore,* 820 S.W.2d at 877; *Johnson,* 690 S.W.2d at 93.

Under both approaches, some oral agreements fail, either because the limitations are not in writing or because they violate the statute of frauds on their face. For example, an employer's agreement to employ a person permanently, for life, for a stated term of years, until retirement, or until age sixty-five is unenforceable unless it is in writing because it cannot be performed within one year. *See, e.g., Crenshaw v. General Dynamics Corp.,* 940 F.2d 125, 128 (5th Cir.1991); *Zimmerman,* 932 F.2d at 473; *Schroeder,* 813 S.W.2d at 489; *Stiver,* 750 S.W.2d at 846; *Benoit,* 728 S.W.2d at 406; *Webber,* 720 S.W.2d at 128.

Where the oral promise made by the employer is that the employee will be retained as long as his work is satisfactory, the result is different. Such an agreement obviously is unenforceable under that line of authority requiring a written contract.

---

**1.** The Texas statute of frauds provides that an oral agreement that cannot be performed within one year from the date of making is unenforceable. Tex.Bus. & Com.Code Ann. § 26.01(b)(6) (Vernon 1987). If by the terms of an oral agreement, the period of its performance is to extend beyond a year, the mere possibility of termination within a year because of death or other fortuitous event does not make the statute

of frauds inapplicable. *Pruitt,* 932 F.2d at 463 n. 5; *Hurt v. Standard Oil Co.,* 444 S.W.2d 342, 344 (Tex.Civ.App.—El Paso 1969, no writ); *Chevalier v. Lane's, Inc.,* 147 Tex. 106, 213 S.W.2d 530, 532 (1948). The statute of frauds "bars only contracts which *must* last longer than one year." *Pruitt,* 932 F.2d at 464; *Morgan,* 764 S.W.2d at 827 (citing *Niday v. Niday,* 643 S.W.2d 919, 920 (Tex.1982)).

See, e.g., Falconer v. Soltex Polymer Corp., 886 F.2d 1312 (5th Cir.1989) (unpublished opinion); Perez, 763 F.Supp. at 200; Rodriguez, 716 F.Supp. at 277. However, oral agreements contingent only on the employee's satisfactory performance have been upheld in a number of instances by courts that recognize the enforceability of oral limitations on employment at will. See, e.g., Portilla, 836 S.W.2d 664; Johnson, 690 S.W.2d at 93; McRae v. Lindale Indep. School Dist., 450 S.W.2d 118, 124 (Tex.Civ.App.—Tyler 1970, writ ref'd n.r.e.); Hardison v. A.H. Belo, 247 S.W.2d 167, 168–69 (Tex.Civ.App.—Dallas 1952, no writ). These courts reason that the employee can be terminated at any time his performance becomes unsatisfactory, a contingency that could occur within the first year. Therefore, such agreements do not violate the statute of frauds because they need not last longer than a year. Id. In Pruitt, the Fifth Circuit concluded that an oral promise of employment as long as the employee performed his job satisfactorily was enforceable under the Texas statute of frauds. 932 F.2d at 464. Nevertheless, because another panel of the Fifth Circuit held to the contrary in Falconer, the Pruitt court felt constrained to follow Falconer because one "panel may not overrule the decision, right or wrong, of a prior panel." Pruitt, 932 F.2d at 465 (quoting Brown v. United States, 890 F.2d 1329, 1336 (5th Cir.1989)). Thus, there is no clear Fifth Circuit precedent on this issue.

Fortunately, this court is not forced to choose between competing lines of authorities, as Rayburn's assertions fail under either approach. The thrust of Rayburn's oral contract claim is that when she was terminated, she was wrongfully deprived of the lifetime income and long-standing employment until retirement that she had been promised. Her first amended complaint is replete with references to "commissions ... for the rest of her life," "policy renewals ... for lifetime of employee," "lifetime income until she died," "future renewal monies for the rest of her life," "renewal payments ... entitled to receive throughout her life," and "long-standing relationship ... and ... a lucrative retirement/pension." (Rayburn Complaint ¶¶ 5, 14, 19, 24, 30). At deposition, Rayburn testified that in 1980, prior to the execution of the 12th Edition contract, Don Foster and Jerry Herzberg told her "[a]s long as you meet minimum club requirements, you will always have a job at The Equitable, and you will have an excellent retirement." (Id. at 36). She further testified that she discussed with Don Bruyneel, her supervisor beginning in 1981, "the fact that an Equitable agent had a lifetime career." (Id. at 42–43). Plaintiff's proposed findings of fact contained in the pretrial order state in ¶ 2 that "Equitable personnel represented to Rayburn that, insofar as she met certain production requirements of The Equitable, she would be assured a position with The Equitable for the rest of her life, as well as a good retirement."

Rayburn's efforts to allege an enforceable oral contract are unsuccessful. A review of the record reveals that the oral representations upon which Rayburn relies are in essence promises of lifetime income, permanent employment, employment until retirement, and long-standing employment. Oral agreements founded on promises of that nature are unenforceable under the Texas statute of frauds. Crenshaw, 940 F.2d at 128; Zimmerman, 932 F.2d at 473; Schroeder, 813 S.W.2d at 489; Stiver, 750 S.W.2d at 846; Benoit, 728 S.W.2d at 406; Webber, 720 S.W.2d at 128. Although Rayburn tries to inject a performance component to avoid the statute of frauds, her claims are similar to those of the plaintiff in Wal–Mart Stores, Inc. v. Coward, 829 S.W.2d at 340. There, the plaintiff alleged that he had an oral agreement in which a management employee said that "[he] had the job as long as [he] wanted it and made a good hand. And he promised [him] a job there for life if [he] wanted it." Id. at 342. The court found that the oral promise was not enforceable because Coward's own testimony placed his employment tenure at a term greater than one year. Id. at 343. Rayburn has likewise placed her tenure of promised employment at greater than one year by her testimony that she was told that she would "always have a job at The

Equitable and ... an excellent retirement," "have a long and successful career," and "[have] a lifetime career." (Rayburn Dep. at 36, 41, 43).

Her testimony and affidavit further reflect that the performance measures she attempts to rely upon cannot be attained within one year. Rayburn testified that she was told that if she accrued ten years of service or met production club requirements, she could not be fired. (Rayburn Dep. 43–44). The ten-year service requirement clearly cannot be attained in one year. Moreover, according to Rayburn's affidavit, production club status is calculated on an annual basis.[2] Although an employee conceivably can attain production club status in less than a year, the failure to attain such status, providing grounds for discharge, cannot be ascertained until after a year has elapsed. Therefore, Rayburn's alleged oral agreement, if not otherwise unenforceable, is barred by the Texas statute of frauds.

Furthermore, because Rayburn was a party to two written employment contracts that expressly permit termination by either party with thirty days' notice, any claims of prior or contemporaneous oral agreements that purport to restrict Equitable's termination rights are not cognizable under Texas law. The 14th Edition contract contains an express merger clause in paragraph XVII, which provides, "This Agreement shall supersede all prior Agent agreements, if any, between the parties hereto." Under the doctrine of merger, a presumption exists, even without an express merger clause, that "the writing itself merges into the instrument all the oral agreements then existing between the parties, the writing thus becoming itself an instrument embodying the parties' whole

and entire agreement." *Cox v. Bell Helicopter Int'l,* 425 F.Supp. 99, 104 (N.D.Tex. 1977) (citing *Lewis v. East Texas Fin. Co.,* 136 Tex. 149, 146 S.W.2d 977 (1941)). *Accord Harville Rose Serv. v. Kellogg Co.,* 448 F.2d 1346, 1349 (5th Cir.1971), *cert. denied,* 405 U.S. 987, 92 S.Ct. 1248, 31 L.Ed.2d 453 (1972).

Moreover, under Texas law, the parol evidence rule excludes evidence of prior or contemporaneous negotiations and representations that are introduced to vary, add to, or contradict the terms of a valid written instrument, in the absence of fraud, accident or mistake. *Cox,* 425 F.Supp. at 103 (citing *Harville,* 448 F.2d at 1350). The parol evidence rule is particularly applicable where, as here, the writing contains a merger clause. *Harville,* 448 F.2d at 1351. At deposition, Rayburn was at a loss to explain why she had signed two written contracts that contain no limitations on Equitable's right to terminate her, but instead include express, thirty-day termination clauses. Because Rayburn has not rebutted the presumption of merger or shown that fraud, accident, or mistake occurred, she is precluded from relying on any oral representations made by Equitable's representatives prior to her signing of the contracts. This prevents Rayburn from relying on any of the representations about which she testified at her deposition, as she admitted they were made before her execution of the written contracts.

While Rayburn alleges in her affidavit that oral representations were made subsequent to her signing the 1982 agreement, she does not specify the contents of the statements, indicate when they were made, identify the speaker, or describe the context.[3] Rayburn does not identify a sin-

---

**2.** "For the year of and at the time of my termination, I was projected on a linear basis to have realized once again the annual attainment of 'production club' status." (Rayburn Aff. ¶ 6).

**3.** Rayburn's affidavit, submitted in connection with her response to Equitable's motion for summary judgment, states, *inter alia:*

    5. Oral representations were made to me by J. Don Foster, CLU, Jerry Herzberg, CLU and Don Bruyneel, CLU of The Equitable pri-

or to, contemporaneously with, and subsequent to the signing of the November 1982 agreement. I relied upon these representations and was induced by them to sign the agreements and to continue to serve The Equitable in my capacity as an agent. The Equitable's representatives continued at all times to ensure me that as long as I met certain minimal production criteria, I would in essence be assured of my position as an agent able to market The Equitable's product. At

gle, specific oral representation that she contends was made to her after the contracts were signed. She also fails to demonstrate that the persons who made the purported representations had authority to alter the written contracts. *See Portilla,* 836 S.W.2d 664; *Moore,* 820 S.W.2d at 877; *Johnson,* 690 S.W.2d at 93. Rayburn never contends that anyone told her expressly that she would not be discharged except for just cause. *See Karp,* 709 F.Supp. at 742; *Ramos,* 711 S.W.2d at 337. Instead, according to the complaint, she "believed" that she would not be fired without just cause. (Rayburn Complaint ¶¶ 5, 31). Rayburn's mere "belief" that she would not be terminated without just cause does not establish the existence of any enforceable agreement to that effect. *See Vallone v. Agip Petroleum Co.,* 705 S.W.2d 757, 758–59 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.). Rayburn's conclusory assertions and vague allegations are insufficient to satisfy her burden to set forth specific facts to counter Equitable's summary judgment evidence. *See Lechuga v. Southern Pac. Transp. Co.,* 949 F.2d 790, 798 (5th Cir.1992); *Miller v. GTE Corp.,* 788 F.Supp. 312, 315 (S.D.Tex.1991); *Bowser,* 714 F.Supp. at 843. Thus, Rayburn's oral contract claim must be rejected.

### C.  *Wrongful Discharge.*

Rayburn asserts that she was wrongfully discharged because, at the time of her termination, she was within six months of attaining the ten-year service requirement for the vesting of renewal commissions under the terms of the written contract. She contends that her termination violated the public policy of the State of Texas, relying on *McClendon v. Ingersoll–Rand Co.,* 779 S.W.2d 69 (Tex. 1989), *rev'd,* 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990), which held that an

employer could not terminate an employee to avoid the payment of pension benefits. In her submissions, Rayburn repeatedly points out that she is not contending she was discharged to avoid paying her pension benefits, but rather to deprive her of vested renewal commissions. No doubt this is due to the fact that the *McClendon* decision was overturned by the United States Supreme Court, holding that McClendon's wrongful discharge claim was preempted by the provisions of the Employee Retirement Income Security Act ("ERISA"). *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990).[4] The Texas Supreme Court accordingly withdrew its previous opinion and judgment, and affirmed the judgment of the court of appeals that had upheld summary judgment for the employer. *McClendon v. Ingersoll–Rand Co.,* 807 S.W.2d 577 (Tex. 1991). Thus, the decision upon which Rayburn relies is no longer viable law.

Moreover, whether preempted or not, Rayburn's claim that she was discharged to prevent the vesting of renewal commissions is not and never has been within a public policy exception to the Texas employment-at-will rule. The only public policy exception now recognized is that announced in *Sabine Pilot Service, Inc. v. Hauck,* 687 S.W.2d 733, 735 (Tex.1985), where the employee was discharged "for the sole reason that the employee refused to perform an illegal act." *See Guthrie v. Tifco Indus.,* 941 F.2d 374, 379 (5th Cir. 1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1267, 117 L.Ed.2d 495 (1992); *Guzman v. El Paso Nat. Gas Co.,* 756 F.Supp. 994, 1002 (W.D.Tex.1990); *Winters,* 795 S.W.2d at 724. Rayburn never asserts that she was asked to perform any illegal acts by Equitable or that she was discharged for refusing to do so. Furthermore, even if a

---

agency meetings conducted by and at the request of my agency managers in the course and scope of my relationship with The Equitable, those agency managers routinely continued in these representations.

**4.** To the extent Rayburn asserts any claims for the loss of health care benefits, these claims,

likewise, are preempted by ERISA. *See id.; Christopher v. Mobil Oil Corp.,* 950 F.2d 1209, 1217–18 (5th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 68, 121 L.Ed.2d 35 (1992); *Cefalu v. B.F. Goodrich Co.,* 871 F.2d 1290, 1294 (5th Cir.1989).

new public policy exception were recognized in this context, Rayburn has set forth no facts to show that Equitable's principal reason for firing her was to avoid the vesting of her renewal commissions. In fact, this claim is untenable in view of the trivial amount of renewal commissions Rayburn had accrued; according to the joint pretrial order, they amounted to only $456 payable over a nine-year period. Therefore, Rayburn's claim of wrongful discharge on public grounds is without basis.

### D. *Covenant of Good Faith and Fair Dealing.*

█ Rayburn asserts that her termination was in violation of a covenant of good faith and fair dealing which is "contained implicitly" in her written employment contract. (Rayburn Complaint ¶ 28). However, Texas courts have consistently refused to impose a contractual covenant of good faith and fair dealing in every contract. *Caton v. Leach Corp.*, 896 F.2d 939, 948 (5th Cir.1990); *Guzman*, 756 F.Supp. at 1000. Rather, the Texas Supreme Court has recognized a tort duty of good faith and fair dealing, but has limited its application to distinct situations. *Id.* at 1001; *Aranda v. Insurance Co. of N. America*, 748 S.W.2d 210, 212–13 (Tex. 1988). Texas courts have injected the tort duty of good faith in discrete, special relationships, earmarked by specific characteristics, including long-standing relations, an imbalance of bargaining power, and significant trust and confidence shared by the parties. *Caton*, 896 F.2d at 948; *Guzman*, 756 F.Supp. at 1001; *Aranda*, 748 S.W.2d at 212–13; *Arnold v. National County Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex.1987).

The Texas Supreme Court has never recognized a duty of good faith and fair dealing in the employment setting. *Day & Zimmermann, Inc. v. Hatridge*, 831 S.W.2d 65, 71 (Tex.App.—Texarkana 1992, writ denied). The Texas appellate courts have uniformly found the employment rela-

tionship not to present an adequate basis upon which to impose the duty of good faith. *See, e.g., id.; Casas v. Wornick Co.*, 818 S.W.2d 466, 468 (Tex.App.—Corpus Christi 1991, writ granted); *Winograd*, 789 S.W.2d at 312; *Hicks*, 789 S.W.2d at 303–04; *McClendon v. Ingersoll–Rand Co.*, 757 S.W.2d 816, 819 (Tex.App.—Houston [14th Dist.] 1988); *Lumpkin*, 755 S.W.2d at 540. In fact, no Texas case has ever recognized a duty of good faith and fair dealing owed by an employer to an employee. *Conaway*, 955 F.2d at 361. Rayburn makes no effort to establish a fiduciary relationship between the parties outside the employment context. Therefore, Rayburn's claim based on breach of a covenant of good faith and fair dealing fails under Texas law. *Rodriguez*, 716 F.Supp. at 277; *Bowser*, 714 F.Supp. at 842.

### E. *Mental Anguish and Emotional Distress.*

█ While not alleging a specific cause of action for either the negligent or intentional infliction of emotional distress, Rayburn seeks damages for mental anguish and emotional distress. (Rayburn Complaint ¶ 18, 25, 29, 32–33). Under Texas law, Rayburn is not entitled to recover for non-economic damages in this context. Damages for mental anguish are not recoverable in an action for breach of contract or for a tort founded on a right growing out of a breach of contract. *Dean v. Dean*, 837 F.2d 1267, 1268 (5th Cir.1988); *Otten v. Snowden*, 550 S.W.2d 758, 759–60 (Tex.Civ. App.—San Antonio 1977, no writ).

The Texas Supreme Court has never recognized a cause of action stemming from the employee/employer relationship for negligent infliction of emotional distress. *Brunnemann v. Terra Int'l, Inc.*, 975 F.2d 175 (5th Cir.1992); *Conaway*, 955 F.2d at 361; *Fiorenza v. First City Bank–Central*, 710 F.Supp. 1104, 1105 (E.D.Tex. 1988). The Texas Supreme Court, likewise, has never recognized a tort of intentional infliction of emotional distress, although a number of Texas appellate courts have

done so. *Diamond Shamrock Ref. Co. v. Mendez,* 844 S.W.2d 198 (Tex.1992).

Those courts that recognize the tort of intentional infliction of emotional distress require the plaintiff to establish: (i) that the defendant acted intentionally or recklessly; (ii) that the conduct was "extreme and outrageous"; (iii) that the actions of the defendant caused the plaintiff emotional distress; and (iv) that the emotional distress suffered by the plaintiff was severe. *Guthrie,* 941 F.2d at 379; *Wilson v. Monarch Paper Co.,* 939 F.2d 1138, 1142 (5th Cir.1991); *Dean v. Ford Motor Credit Co.,* 885 F.2d 300, 306 (5th Cir.1989); *Guzman,* 756 F.Supp. at 1002; *Tidelands Auto. Club v. Walters,* 699 S.W.2d 939, 942 (Tex. App.—Beaumont 1985, writ ref'd n.r.e.). While "extreme and outrageous conduct" is an amorphous phrase that escapes precise definition, there appears to be a consensus that conduct is "outrageous" if it surpasses "all bounds of decency," such that it is "utterly intolerable in a civilized community." *Wilson,* 939 F.2d at 1142; *Guzman,* 756 F.Supp. at 1002; *Mendez,* 844 S.W.2d 198. In *Dean,* the Fifth Circuit stated:

> Liability [for outrageous conduct] has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible grounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.... Generally, the case is one in which a recitation of the facts to an average member of the community would lead him to exclaim, "Outrageous."

885 F.2d at 306 (citing Restatement (Second) Torts § 46, Comment d (1965)). In short, even though an employer's conduct may rise to the level of illegality, "except in the *most* unusual cases" it is not the sort of conduct, as deplorable as it may sometimes be, that constitutes "extreme and outrageous" conduct. *Wilson,* 939 F.2d at 1143.

In the instant case, Rayburn has made no showing that her injuries were severe or that Equitable's conduct, while perhaps not compassionate, was "extreme or outrageous." Even if Rayburn was terminated six months short of being vested for renewal commissions and one year after her husband died, leaving her without health insurance benefits and the sole support of her family, this court cannot say that the difficulties she encountered were any more onerous than those suffered by others who have lost their jobs. Moreover, there is no evidence that Equitable treated her with disrespect or caused her to suffer any indignity. *See Guthrie,* 941 F.2d at 379; *Mendez,* 844 S.W.2d 198. Equitable's conduct simply cannot be regarded as atrocious or as exceeding all bounds of civilized behavior. Under these circumstances, Rayburn's damages claims for mental anguish and emotional distress are not cognizable under Texas law.

### III. Conclusion.

Equitable has met its burden of coming forward with evidence that supports summary judgment, as the evidence resolves Rayburn's claims and leaves no genuine issue of material fact upon which Rayburn may proceed.[5] Rayburn has failed to rebut the evidence, and Equitable is, therefore, entitled to judgment as a matter of law. Based on the foregoing, it is ORDERED that Equitable's Motion for Summary Judgment is GRANTED.

---

5. There remains a genuine issue of material fact as to the amount, if any, of prepaid commissions Equitable is entitled to recover from Rayburn on Equitable's counterclaim.